# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLUB ONE CASINO, INC., dba CLUB ONE CASINO; GLCR, INC., dba THE DEUCE LOUNGE AND CASINO,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; RYAN ZINKE, in his official capacity as Secretary of the Interior; and MIKE BLACK in his official capacity as Acting Assistant Secretary of the Interior – Indian Affairs,<br><br>Defendants. | CASE NO. 1:16-cv-01908-AWI-EPG<br><br>**ORDER AUTHORIZING THE PARTIES TO SUBMIT SUPPLEMENTAL BRIEFING REGARDING PLAINTIFFS' MOTION TO SUPPLEMENT THE ADMINISTRATIVE RECORD** |

## I. Introduction

Plaintiffs Club One Casino and The Deuce Lounge (collectively "Plaintiffs" or "Club One") bring the instant Administrative Procedures Act ("APA") challenge to the issuance of Secretarial Procedures by the United States Department of the Interior, the Secretary of the Interior, and the Assistant Secretary for Indian Affairs (collectively "DOI" or "Federal Defendants") permitting the North Fork Rancheria of Mono Indians ("North Fork") to conduct tribal gaming on a 305.49 acre parcel of land in Madera County, California (the "Madera Site"). Complaint, Doc. 1 ("Compl.") at ¶ 1. The substance of the challenge is directed at whether the

1

Federal Defendants adequately considered whether North Fork exercised jurisdiction over the Madera Site for purposes of the Indian Gaming Regulatory Act ("IGRA"), 29 U.S.C. § 2701, et seq.

In accordance with the Scheduling Order issued by the assigned magistrate judge, the Federal Defendants lodged the administrative record with the Court on May 12, 2017. On June 27, 2017, within the time set by the magistrate judge, Plaintiffs filed a motion to supplement the administrative record. The matter is now fully briefed. For the following reasons, ruling on Plaintiff's motion to supplement the administrative record will be delayed to permit the parties to submit supplemental briefing.

## II. Factual Background[1]

The North Fork Rancheria of Mono Indians is a federally recognized Indian tribe. Compl. at ¶ 20; *see* Indian Entities Recognized…, 81 Fed.Reg. 26826, 26829 (May 4, 2016). This action is one in a series of actions surrounding the proposed construction and operation of a hotel and class III casino by North Fork at the Madera Site, which is held in trust by the Secretary of the Interior on behalf of North Fork.

Club One "is a cardroom licensed by the State of California," operating in Fresno, California. Compl. at ¶ 13. It conducts "card and tile games … including variants of poker, baccarat, [and] blackjack." *Id*. The Madera site is roughly twenty five miles from Club One's cardroom. *Id.* at ¶ 14. GLCR, Inc., doing business as the Deuce Lounge and Casino, is also a cardroom licensed by the State of California, operating in Goshen, California. *Id*. at ¶ 16. The Deuce Lounge is roughly sixty five miles from the Madera Site. If North Fork opens a class III gaming facility on the Madera Site, it will be in "direct competition with games offered by [Club One and the Deuce Lounge]." *Id*. at ¶¶ 14, 16.

---

[1] This Court previously set forth a factual statement regarding North Fork's acquisition of the Madera Site, its negotiation with the State of California regarding a tribal-state compact, ratification of the compact by the California legislature, and the California referendum rejecting the ratification of the compact. *North Fork Rancheria of Mono Indians of California v. California*, 2015 WL 11438206, *1-4 (E.D. Cal. Nov. 13, 2015) ("*Good Faith Litigation I*"). The Court also described some of the other actions related to the proposed class III gaming on the Madera Site. *Picayune Rancheria of Chukchansi Indians v. Department of the Interior*, 2017 WL 3581735, *3-5 (E.D. Cal. Aug. 18, 2017). Here, the Court only provides the facts necessary to give context to the instant motion to supplement the administrative record.

In 2005, North Fork submitted a fee-to-trust application to the Department of the Interior to have the Madera Site taken into trust pursuant to the Indian Reorganization Act ("IRA"), 25 U.S.C. § 5108.[2] A favorable "two-part determination" was made pursuant to Section 2719 of IGRA, whereby the Secretary of the Interior found that gaming on the land would (1) be in the best interest of North Fork and its members and (2) not be detrimental to the surrounding community. The Governor of the State of California informed the Secretary that he concurred with the Secretary's two-part determination.[3] On February 5, 2013, the Secretary of the Interior took the Madera Site into trust for the benefit of North Fork. Prior to the fee-to-trust acquisition, the Madera Site was owned by a private party.

In order for a Native American tribe to conduct class III gaming on Indian land the tribe must enter into a tribal-state compact with the State where the gaming is to be conducted. *See* 25 U.S.C. § 2710(d)(1)(C); Compl. at ¶ 22. On August 31, 2012, the Governor concluded a compact with North Fork to govern gaming at the Madera Site (the "2012 Compact"). *See Id*. "On June 27, 2013, the California Legislature passed Assembly Bill 277 [("AB 277")], which ratified the compact, and on July 3, 2013, Governor Brown signed the legislation into law." Compl. at ¶ 23. Sufficient signatures were gathered to place a veto referendum for AB 277 on the November 2014 ballot. *Id*. at ¶ 24. That veto referendum, commonly known as Proposition 48—Referendum on Indian Gaming Compacts, passed with a vote of 61% against ratification of AB 277 and 39% in favor of ratification of AB 277.

North Fork again requested that the State of California enter into negotiations toward concluding a compact governing gaming on the Madera Site. The State of California refused, indicating that such negotiations would be futile in light of the result of Proposition 48. *Good Faith Litigation I*, 2015 WL 11438206 at *7. North Fork filed an action with this Court alleging that the State of California failed to negotiate in good faith. *See Id.* Ultimately, this Court agreed with North Fork, finding that California's refusal to negotiate regarding a compact post-referendum was in violation of IGRA. *Id.* at *8. It ordered the State and North Fork to conclude a

---

[2] This Section was previously codified at 25 U.S.C. § 465.
[3] The validity of that concurrence under California law is the subject of *Stand Up for California! v. State of California*, 6 Cal.App.5th 585 (Cal. Ct. App. Dec. 16, 2016) (review granted 215 Cal.Rptr.3d. (Mar. 22, 2017)).

compact within sixty days. *Id.* at *12. When the parties failed to do so, the Court selected a mediator and directed the parties to submit their last best offers to the mediator. *Good Faith Litigation*, 1:15-cv-00419-AWI-SAB, Doc. 30 (E.D. Cal. Jan. 26, 2016). The parties submitted their last best offers. *See Good Faith Litigation*, 1:15-cv-00419, Secretarial Procedures, Doc. 44-1 ("Secretarial Procedures") at 2 (E.D. Cal. Aug. 2, 2016). The mediator selected North Fork's proposed compact as the compact that best comported with IGRA, Federal law, and the orders of this Court. *Id*. The mediator thereafter submitted the compact to the State for consent to the compact. *Id.* The State did not consent to the selected compact within the statutorily set period. *Id.* As a result, the mediator notified the Secretary of the Interior. *Id.* On July 29, 2016, the Secretary prescribed procedures under which North Fork could conduct gaming on the Madera Site. *Id.* at 4-140.

### III. Legal Standard

One of this Court's sister courts recently described the scope of judicial review and the process for determining the adequacy of an administrative record in the APA context:

> [T]he scope of judicial review is limited to "the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). The administrative record is "not necessarily those documents that the agency has compiled and submitted as 'the' administrative record." *Thompson v. U.S. Dept. of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (internal citation omitted). Rather, " '[t]he whole record' includes everything that was before the agency pertaining to the merits of the decision." *Portland Audubon Soc'y v. Endangered Species Comm*., 984 F.2d 1534, 1548 (9th Cir. 1993) (internal citation omitted). "The 'whole' administrative record, therefore, consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.3d at 555 (emphasis added).
>
> [¶¶]
>
> However, the record does not include "every scrap of paper that could or might have been created" on a subject. *TOMAC v. Norton*, 193 F. Supp. 2d 182, 195 (D.D.C. 2002).
>
> A broad application of the phrase "before the agency" would undermine the value of judicial review: Interpreting the word "before" so broadly as to encompass any potentially relevant document existing within the agency or in the hands of a third party would render judicial review meaningless. Thus, to

4

> ensure fair review of an agency decision, a reviewing court should have before
> it neither more nor less information than did the agency when it made its
> decision.
>
> *Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 5
> (D.D.C. 2006) (internal citations and quotations omitted). The record certainly
> need not include documents that became available after the agency's decision had
> already been made ("post-decisional" documents). *See Vermont Yankee Nuclear
> Power Corp. v. NRDC*, 435 U.S. 519, 555 (1978) (judicial review is "limited [ ]
> by the time at which the decision was made").
>
> An agency's designation and certification of the administrative record is entitled
> to a "presumption of administrative regularity." *McCrary v. Gutierrez*, 495 F.
> Supp. 2d 1038, 1041 (N.D. Cal. 2007). This presumption requires courts to
> presume that public officials have properly discharged their official duties. *Id*. It is
> the burden of the party seeking to supplement the record to overcome this
> presumption by producing clear evidence to the contrary. *Bar MK Ranches v.
> Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993); *McCrary*, 495 F. Supp. 2d at 1041.

*Natural Resources Defense Council v. Zinke*, 2017 WL 3705108, *2-3 (E.D. Cal. Aug. 28, 2017). A plaintiff can overcome the presumption of regularity in four situations: "(1) if admission [of supplemental evidence] is necessary to determine whether the agency has considered all relevant factors and has explained its decision [;] (2) if the agency has relied on documents not in the record[;] (3) when supplementing the record is necessary to explain technical terms or complex subject matter[;] or (4) when plaintiffs make a showing of agency bad faith." *Lands Council v. Powell*, 395 F.3d 1019, 1029 (9th Cir. 2005) (citing *Southwest Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)).

## IV. Discussion

It is Plaintiffs' position that supplementation of the administrative record is necessary to demonstrate that the Federal Defendants failed to consider whether North Fork exercised territorial jurisdiction over the Madera parcel on the date when Secretarial procedures were prescribed. Plaintiffs argue supplementation of the record is necessary to show that the Federal Defendants failed to consider all relevant factors in coming to its decision. *See Lands Council*, 395 F.3d at 1029. Specifically, Plaintiffs seek supplementation of the record to include the following documents:

1) The Declaration of James N. Cordova attesting to the chain of title through the certified

deeds that trace the title to the [Madera Site] from statehood in 1850 to the transfer to the federal government in 2013; these deeds are part of the official records of Fresno and Madera Counties [(the "Chain of Title")];

  2) Two Records of Decision ("RODs") both issued by [D]efendants, with respect to the [Madera Site];

      a) The ROD issued in 2011 as to the so-called "2719 Determination" that the [Madera Site] can be taken into trust for possible future use as a casino gaming site under [IGRA] [(the "2011 IGRA ROD")]; and

      b) The ROD issued in 2012 as to the decision to take the land into trust [under the Indian Reorganization Act ("IRA")] [(the "2012 IRA ROD")].

  3) Excerpts from public filings posted on the SEC website documenting ownership of the [Madera Site] by Station Casinos, a Nevada gaming corporation, immediately prior to the transfer to the United States.[fn]

Doc. 22 at 3.

Whether the Court should allow supplementation of the record with each of those documents turns on the success of Plaintiffs' substantive argument—that "any suggestion that [North Fork] has territorial jurisdiction over the subject parcel is completely unsupported by the … record." Doc. 22 at 6. It is undisputed that the Secretary can proscribe procedures for gaming only if the contemplated gaming activities would "be conducted on the Indian lands over which the Indian tribe has jurisdiction." 25 U.S.C. § 2710(d)(7)(B)(vii)(II); *see also* 25 C.F.R. § 291.11 (governing Secretarial Procedures when the state has invoked sovereign immunity from good faith negotiation suit). The dispute between the parties regards the requisite finding that must be made for the Secretary to conclude that the Madera Site was Indian land over which North Fork exercised jurisdiction.

Plaintiffs contend that the Secretary erred in concluding that the Madera Site is "Indian lands over which [North Fork] has jurisdiction" without first considering whether North Fork exercises territorial jurisdiction over the Madera Site. Doc. 22 at 4. It is Club One's position that the State of California must have affirmatively ceded jurisdiction over the Madera Site to the federal government in order for North Fork to exercise jurisdiction over the land within the meaning of IGRA. *See* 25 U.S.C. §§ 2710(d)(3)(A), 2710(d)(7)(B)(vii)(II). The Secretary responds that the it correctly determined that North Fork had "jurisdiction over the Indian lands," 25 U.S.C. §§ 2710(d)(3)(A), 2710(d)(7)(B)(vii)(II), when the Secretary noted that Madera Site

6

was taken into trust for North Fork and was gaming eligible. Accordingly, the Secretary contends that the "jurisdiction over Indian land" requirement is satisfied in consideration of (1) the ROD indicating that the Madera Site was held in trust on behalf of North Fork and (2) the ROD indicating that the Madera Site was gaming eligible. *See* 25 U.S.C. § 2710(d)(7)(B)(vii)(II). The fee-to-trust determination and 2719 after-acquired lands determination, Plaintiffs contend, are divorced from the question of whether North Fork exercised territorial jurisdiction over the Madera Site. If Plaintiffs are correct, the proposed supplementation material would be valuable to show that Defendants failed to consider all relevant factors in coming to their decision. If Plaintiffs are incorrect, the proposed supplementation material would be irrelevant. Despite Plaintiffs' promise to brief the issue at summary judgment, they have done little to explain why the Court should allow for supplementation of the administrative record now. They have presented no authority to suggest that the Secretary in fact failed to consider evidence necessary to determine whether North Fork exercised jurisdiction over the Madera Parcel.

Plaintiffs do lay out the skeleton of their argument. The premise of Plaintiff's argument is that *possession* of Indian lands is a separate analytical component from *exercise of jurisdiction over* Indian lands. Plaintiffs direct the Court to 40 U.S.C. § 3112 for the proposition that without express acceptance of jurisdiction over land by the United States by way of filing a notice of acceptance with the Governor of the State, "[i]t is conclusively presumed that jurisdiction has not been accepted." 40 U.S.C. § 3112(b), (c). They contend that the Secretary of Interior never accepted jurisdiction over the Madera Site so presumptively territorial jurisdiction remains with the state to the exclusion of North Fork.

Although Plaintiffs often repeat that "territorial jurisdiction is … at the heart of IGRA," *see* Doc. 22 at 7, Plaintiffs provide no authority for that position. In fact, Plaintiff's argument is devoid of any authority tending to suggest that IGRA contemplates that a State must affirmatively cede all territorial jurisdiction over the Indian lands.[4] Indeed, there are strong

---

[4] In fact, counsel for Plaintiffs omits mention that he advanced the same theory to the California First District Court of Appeal in *Stop the Casino 101 Coalition v. Brown*, 230 Cal.App.4th 280 (Cal. Ct. App. 2014). That court emphatically rejected the suggestions that (1) exclusive jurisdiction over Indian land by an Indian tribe is required by IGRA, and (2) that Indian tribes do not "necessarily exercise some jurisdiction over" Indian lands. *Id* at 287-288. The First District went on to hold that "acceptance by the federal government of land in trust for an Indian tribe …

7

indications that when the Secretary takes land into trust for an Indian tribe, at least some jurisdiction over the land inherently shifts to the tribe. *See* 25 U.S.C. § 2701(5) ("Indian tribes have the exclusive right to regulate gaming activity on Indian lands…."); 18 U.S.C. § 1166(d) ("The United States shall have exclusive jurisdiction over criminal prosecutions of violations of State gambling laws … unless [the] Indian tribe … has consented to the transfer to the State of criminal jurisdiction with respect to gambling on the lands of the Indian tribe."); 25 C.F.R. § 1.4 (Except as authorized by the Secretary, "none of the laws … of any State … controlling the use or development of real or personal property, including water rights shall be applicable" to Indian land.); *Duro v. Reina*, 495 U.S. 676, 696 (1990) (Indian "tribes … possess their traditional and undisputed power to exclude persons whom they deem to be undesirable from tribal lands.") (citation omitted); *see also Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 15 (1987) ("If state-court jurisdiction over Indians or activities on Indian lands would interfere with tribal sovereignty and self-government, the state courts are generally divested of jurisdiction as a matter of federal law.").

The Supreme Court has given little reason to think that establishment of jurisdiction over Indian land is a process completely divorced from the IRA fee-to-trust determination. In *City of Sherrill v. Onieda Indian Nation,* 544 U.S. 197, 220-221 (2005), the Supreme Court described the IRA as "providing the proper avenue for … [tribal] reestablish[ment] [of] sovereign authority over a territory" no longer held by the tribe. It would certainly appear that the Secretary taking land into trust for an Indian tribe affords a basis to find that the tribe exercises at least concurrent jurisdiction over that Indian land; a separate determination of territorial jurisdiction would appear to be unnecessary.

Despite the foregoing, the Court will not decide the issue without affording the parties an opportunity to brief the substantive question. At this juncture, the Court will invite the parties to submit supplemental briefing regarding what it means for an Indian tribe to exercise jurisdiction over Indian lands for purposes of IGRA. Any such briefing must be submitted by Monday,

---

confers jurisdiction on the tribe over the resulting [Indian land.]" *Id.* at 289 (citing *City of Roseville v. Norton*, 219 F.Supp.2d 130 (D.D.C. 2002)).

October 16, 2017.

## V. Order

Based on the foregoing, the parties are hereby AUTHORIZED to submit supplemental briefing on the issue identified herein by Monday, October 16, 2017.

IT IS SO ORDERED.

Dated:   September 25, 2017        _____
                                   SENIOR  DISTRICT  JUDGE